AYERS *v.* MANNING *et al.*

*(Circuit Court, S. D. Illinois.* April, 1891.)

ASSIGNMENT FOR BENEFIT OF CREDITORS—ACTIONS BY ASSIGNEE—PARTIES.

A non-resident partnership owned lands in Illinois, which it placed in charge of an agent, under an agreement that his compensation should be one-half of the net profits realized on a sale of the land. Subsequently the partnership made a voluntary assignment for the benefit of creditors; and its resident creditors, including the agent, after learning of this fact, attached the land. *Held,* that such attachments, being by resident creditors, were valid as against the assignee, who claimed under non-resident debtors; and that the attaching creditors, other than the agent, were not proper parties to an action brought by the assignee to have the title to the land judicially vested in him, and to compel an accounting by the agent.

In Equity. Bill for injunction.
*Smith & Harlan,* for complainants.
*John M. Palmer* and *William W. Clemens,* for defendants.
Before GRESHAM and ALLEN, JJ.

GRESHAM, J. This is a suit by Marshall Ayers, assignee of Sawyer, Wallace & Co., and the members of that firm, Samuel A. Sawyer, David L. Wallace, and Thomas Miller, all citizens and residents of New York and New Jersey, against Michael W. Manning, for an accounting, and against others, as attaching creditors of the firm, all residents of Illinois. The bill, as first filed, charged that, for some years, the firm carried on a commission business with its principal office in the city of New York, and in connection therewith became the owner of farming lands, and implements thereon, in Williamson and Franklin counties, Ill., the title to which was vested in Sawyer in trust for the firm; that the facts connected with the purchase of the lands, and their subsequent improvement and management, up to September 4, 1890, appeared upon the books of the firm; that the defendant Michael W. Manning was employed as agent to manage the lands and superintend their cultivation, which he did himself, and through tenants; that during his agency he paid the taxes, received money from the firm to pay for improvements, implements, and animals, and made remittances to the firm; "that a contract in writing was made on or about the 1st day of May, 1888, by and between the said firm and said Manning, by the terms of which it was, among other things, provided that when the said lands should be sold the said Manning should be entitled to one-half of the amount which should be realized upon a sale of said premises in excess of the cost there-

of, which cost was to be fixed by taking the amount then standing upon the books of said firm as the cost of said premises, and adding thereto the amount that might thereafter be expended for permanent improvements;" that on September 2, 1890, Sawyer and wife, by deed, duly executed, undertook to convey to Sawyer, Wallace, and Miller, as partners, the lands and personal property thereon, which deed was recorded in Franklin county on September 4, and in Williamson county on the day following; that this deed was executed after the partners had determined to make a voluntary assignment in New York, under the laws of that state, for the equal benefit of all their creditors, the firm being then insolvent; that on September 4 such an assignment was executed to the complainant, Ayers, vesting in him the title to the entire property and assets of the firm of every kind and nature, as well as the individual property of each member of the firm; that before the deed of assignment was recorded in Franklin county on September 6, and in Williamson county on September 10, the assignee notified Manning of its execution, and the insolvency of the firm, who agreed that he would thereafter act as the agent of the assignee, as he had previously acted for the firm; that on September 9, and after he had become the agent of the assignee, Manning commenced a suit in attachment in the Williamson county circuit court of Illinois against Sawyer, Wallace & Co., for an alleged indebtedness of $2,500, and on the same day the sheriff levied the writ on part of the lands embraced in the deed of assignment; that W. T. Davis, Westbrook & Sons, Arthur B. Manning, and Charles Carroll commenced similar suits in the same court against Sawyer, Wallace & Co., and caused their attachment writs to be levied on other lands embraced in the deed of assignment; that some of the latter levies were made before the deed of assignment was recorded in Illinois, and some afterwards, but the attachment suits were all commenced after the plaintiffs had received actual notice of the assignee's acceptance of the trust. The bill also charged that the attaching creditors commenced their suits for the purpose of obtaining preferences in violation of the laws of Illinois, and to defeat the trust created by the assignment; that, in order to enable the assignee to dispose of the lands advantageously, it was necessary that the title thereto, with power of sale, should be vested in him by a decree, and that his right to the lands should be ascertained and established against all the defendants; "that the defendant Michael W. Manning claims a lien upon said lands, and the right to retain said personal property until the claim which he makes shall have been satisfied;" that, instead of having any valid claim against the firm, an accounting would show him to be indebted to it; and that, if the proceeds of the lands were divided ratably among all the creditors of the insolvent firm, they would sell for more than could otherwise be realized from them. The bill prayed for an accounting between the complainants and Michael W. Manning; that he be decreed to have no title or interest in the property by reason of his contract of agency; that the title be vested in the assignee, free of any interest or claim of Manning growing out of his contract of agency; that neither he, nor any of the other attaching creditors, acquired any lien by the commencement of their suits in the

state court, and the levy of their writs of attachment; and that they all be perpetually enjoined from prosecuting their suits, and required to accept their ratable share of the proceeds of the sale of the assigned property in common with the other creditors,—and for other proper relief After the defendants, except the two Mannings, who answered, had demurred to the bill, it was amended by striking out so much of it as sought to enjoin the prosecution of the suits in the state court, and the same defendants again demurred. It is urged by the complainants' counsel that on the averments of the bill the agent has an interest in the lands, the extent of which can be ascertained only by a sale; that, although the other defendants are not interested in the accounting, it should be determined in advance of an order of sale what, if any, right they have acquired to the attached premises; and that they are therefore proper parties. It does not appear that the agent was to be compensated for his services otherwise than by receiving half the net proceeds arising from a sale of the lands, nor does it appear how long he was to discharge the duties of the agency for this uncertain compensation, or how or when the lands were to be sold. It is plain, however, that even if the agent acquired a lien or interest in the lands under the contract set out in the bill (which it would be difficult to maintain) he has no right to insist upon their sale, unless it is made to appear that, including permanent improvements, they are worth or will sell for more than the purchase price. The agent's compensation, by his own agreement, became contingent, and it is not averred that the lands were worth more than they cost, or that they will sell for more. But the bill does aver that there is nothing due the agent, and that may explain why, during the argument, it was asserted by the counsel for the defendants, and not denied by the complainants, that the value of the lands did not exceed half their cost. The deed of assignment vested in the assignee in trust the title to the property of the non-resident insolvents in Illinois, subject to the rights of resident creditors. The effect would have been different had the conveyance been to a purchaser for a valuable consideration. A state may determine for itself the extent to which such grants shall be operative on property within its own limits, against its own citizens. It may say that, before an assignee removes such property to a foreign jurisdiction for administration, resident creditors shall be paid. Such legislation or judicial determination would not violate the right or privilege of a citizen of one state to acquire and hold property in another state. It is settled law in Illinois that a voluntary assignment by an insolvent non-resident debtor will not hold property here against resident attaching creditors, whether the attachment suit be commenced before or after notice of the assignment. *Heyer* v. *Alexander*, 108 Ill. 385; *May* v. *Bank*, 122 Ill. 551, 13 N. E. Rep. 806. If the demurrants are seeking to recover more than is justly due them,—and it is not averred that they are,—the assignee's right to become a party to the attachment suits is clear. The demurrants are not interested in the accounting between the complainants and the agent; no decree can be entered against them touching the accounting; there is no reason why

they should be harassed with litigation in which they are not concerned; and we are unable to see that, in any view of the case, they are proper parties. The demurrers are sustained.